Susan M. Rotkis, AZ Bar 032866
PRICE LAW GROUP, APC
382 S. Convent Ave.
Tucson, Arizona 85716
Tel. (520) 622-2481
susan@pricelawgroup.com

Hans Lodge, MN Bar 397012
seeking admission pro hac vice
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
hlodge@bm.net

Attorneys for Plaintiff, Daniel Juliano

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| Daniel Juliano, | CASE NO. _____ |
| Plaintiff, | **Complaint** |
| | **Trial by Jury Demanded** |
| v. | |
| TransUnion Rental Screening Solutions, LLC | |
| Defendant. | |

Plaintiff Daniel Juliano ("Plaintiff" or "Mr. Juliano"), by and through his attorneys, brings the following Complaint and states as follows:

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against TransUnion Rental Screening Solutions, LLC ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3. Defendant falsely reported to Mr. Juliano's potential landlord that Mr. Juliano is a convicted felon. In fact, Mr. Juliano is not a convicted felon. Maricopa County, Arizona court records confirm that he has only been convicted of a misdemeanor.

4. Making matters worse, even after Mr. Juliano disputed the false information in Defendant's report, Defendant refused to correct his report.

5. Defendant's inaccurate reporting cost Mr. Juliano his ability to rent the property of his choice that was suitably accommodating of his physical disabilities, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

6. Defendant's inaccurate report could have been easily remedied had Defendant consulted current public record prior to issuing Mr. Juliano's report to his prospective landlord.

7. Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Mr. Juliano's report being inaccurate.

8. Defendant failed to perform a reasonable reinvestigation of its inaccurate report after receiving Mr. Juliano's initial dispute.

9. As a result of Defendant's conduct, Mr. Juliano brings claims for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) and for failure to conduct a reasonable reinvestigation based on § 1681i(a)(1)(A) of the FCRA.

## **THE PARTIES**

10. Plaintiff Daniel Juliano is a natural person who resides in Phoenix, Arizona, and who is a "consumer" protected by the FCRA.

11. Defendant TransUnion Rental Screening Solutions, LLC ("TURSS") is a Delaware corporation doing business throughout the United States, including in the State of Arizona, and has a principal place of business located at 5889 South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, CO 80111. It is a wholly-owned subsidiary of TransUnion, LLC, which is wholly owned by TransUnion Intermediate Holdings, Inc.

12. Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

13. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

16. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all consumer reports such as the tenant screening report prepared in Mr. Juliano's name.

17. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks like TURSS are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

18. The FCRA provides a number of protections for housing applicants who are subject to background checks.

19. The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

20. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

21. Under 15 U.S.C. § 1681i, when a consumer disputes the accuracy of information included in a report, consumer reporting agencies are required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

# FACTS

## Defendant's Inaccurate Tenant Screening Report

22. In January 2019, Mr. Juliano and his fiancé, Shelby Vaughn ("Ms. Vaughn"), sought to rent an apartment in the greater Phoenix, Arizona area.

23. In looking for a rental property, Mr. Juliano found only one that met his needs, an apartment unit at The Retreat Apartments ("The Retreat") complex in Phoenix, Arizona.

24. In addition to being accommodating of his physical limitations, Plaintiff had a preference for renting at The Retreat because it allowed tenants to have pets in their units. Mr. Juliano and Ms. Vaughn have two dogs. And, The Retreat was an affordable and attractive option given the quality of units and numerous amenities.

25. The Retreat was managed by Bridge Property Management, LC ("Bridge Management").

26. In or about mid-January 2019, Mr. Juliano contacted The Retreat by telephone and spoke with Bridge Management's Leasing Manager, Brittney Patterson ("Ms. Patterson"), expressing his interest to rent an apartment unit for $1,027.00 per month.

27. Sometime thereafter, Mr. Juliano and Ms. Vaughn met with Ms. Patterson at The Retreat and were given a tour of the complex and available apartment units. After completing the tour, Ms. Patterson instructed Mr. Juliano to complete a rental application online and submit payment, which would cover fees for the application and a background check.

28. Later that same day, Mr. Juliano completed the rental application and submitted it to The Retreat, along with his debit card information for payment of the application and background check fee.

29. Landlords may obtain tenant consumer reports for certain legitimate reasons such as to promote safety of the community and protection of property. Such reports can be used for the purpose of or result in housing discrimination,

including, but not limited to, persons based on disabilities, race, sex, marital, family or parental status, country of origin or religious affiliation.

30. The Retreat contracted with TURSS to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant is eligible to rent an apartment unit.

31. On or about January 31, 2019, The Retreat obtained a consumer report regarding Mr. Juliano from TURSS, which it calls a "Resident Screening Report" ("the Report"), which included a compilation of Mr. Juliano's credit report, a criminal record report, and eviction report.

32. The Report is a consumer report regulated by the FCRA.

33. The "Criminal Report" section of the Report included the following information:

> Activity Type: CRIMINAL/TRAFFIC
>
> Court Record Id: S-0700-CR-2014121784
>
> Jurisdiction Description: MARICOPA COUNTY SUPERIOR
>
> Charge Sequence Id: 1
>
> Charge Description: DISORD CONDUCT-WEAPON/INSTR
>
> Charge Degree: FELONY CRIMINAL
>
> Charge Disposition Date: 2014-07-10
>
> Disposition: GUILTY
>
> Charge Filing Date: 2014-05-12
>
> Charge Sequence Id: 2

Charge Description: ASSAULT RECKLESSLY

Charge Degree: MISDEAMEANOR CRIMINAL

Charge Disposition Date: 2014-08-08

Disposition: COMPL DIMISSED BY COURT

Charge Filing Date: 2014-05-12

34. TURSS's reporting was false. The aforementioned felony charge and guilty disposition should not have been included in Mr. Juliano's Report.

35. Any member of the public who took a five-minute cursory review of Mr. Juliano's public record on the internet could confirm the flaw in the TURSS report about Mr. Juliano. It is indisputable that prior to supplying the report about Mr. Juliano to The Retreat, TURSS failed to consult current public records in Maricopa County, Arizona, which indicate that his disorderly conduct charge had been designated a **misdemeanor** pursuant to an Order of Discharge From Probation ("Order of Discharge") signed by Maricopa County Superior Court Judge Cynthia Gialketsis on January 30, 2017.

36. Mr. Juliano was humiliated that his potential landlord now thought he was a convicted felon, especially considering that he had truthfully stated in his rental application that he was not a convicted felon.

37. On February 3, 2019, Mr. Juliano received a telephone call from Ms. Patterson, which was answered by Ms. Vaughn because Mr. Juliano was driving. Ms. Patterson informed Ms. Vaughn that The Retreat had denied Mr. Juliano's rental application because it received a background check from TURSS reporting that Mr. Juliano had been convicted of a felony.

38. Ms. Vaughn immediately started crying and shared the information she had received from Ms. Patterson with Mr. Juliano.

39. Later that same day, Mr. Juliano received an email from Ms. Patterson informing him that she had some bad news: the background check came back from TURSS and it was denied due to his criminal history. Ms. Patterson recommended that Mr. Juliano call TURSS to see if there had been an error since his rental application indicated that he was not a convicted felon.

40. On or about February 3, 2019, Mr. Juliano contacted TURSS by telephone, spoke with a representative, provided his personal information, and requested to open a dispute into the inaccuracy of the information contained in his Report. Mr. Juliano specifically informed the representative that the criminal charge reporting as a felony on his Report was inaccurate and should be reporting as a misdemeanor. The representative responded that TURSS records indicate that the criminal charge was accurately reported as a felony and, therefore, no changes would be made to his Report. Mr. Juliano asked to speak with a manager. A manager at TURSS spoke with Mr. Juliano and informed him that his dispute "was already closed" and that if he wasn't satisfied, he could call back and open a new dispute.

41. On or about February 5, 2019, Mr. Juliano placed another telephone call to TURSS, spoke with a representative, provided his personal information, and requested to open a second dispute into the accuracy of the information contained in his Report. Mr. Juliano was informed that TURSS would reinvestigate and get back to him within two or three weeks. Mr. Juliano also requested TURSS's fax number, which the representative provided.

42. On February 5, 2019, Mr. Juliano received mail correspondence from TURSS, which read:

> We received your request for investigation regarding your potential criminal history on 2/3/2019. After further investigation, our findings show the record in our database under S-0700-CR-

> 2014121784 **has been confirmed as accurate public record information** based on the following record details obtained from the Arizona, The Judicial Branch of Arizona Maricopa County website.
>
> On 2/4/19 we confirmed that record S-0700-CR-2014121784 for the offense of Disord Conduct-Weapon/Instr has the offense level Felony and disposition Guilty on 7/10/2014 with no information that the offense level was reduce (sic) to a misdemeanor.
>
> Additionally, we have provided notification of this dispute resolution and final outcome to our customer Retreat.
>
> Based on the Retreat criminal history policies for Weapons Related Offenses; **the recommendation our office made to this customer based on their criminal history policies has not changed and remains a decline recommendation** as a result of the dispute investigation process.

(emphasis added).

43. In the days that followed, Mr. Juliano personally went to the Maricopa County Superior Court and obtained a copy of the public record, which indicated that his disorderly conduct charge had, in fact, been designated a misdemeanor pursuant to the aforementioned Order of Discharge.

44. That same day, Mr. Juliano faxed a copy of the Order of Discharge to TURSS and hand delivered a paper copy to Ms. Patterson at The Retreat.

45. On February 6, 2019, with the assistance of counsel, Mr. Juliano personally sent a 15 U.S.C. § 1681g file request to TURSS.

46. On February 12, 2019, TURSS responded to Plaintiff's 15 U.S.C. § 1681g file request and enclosed two copies of Plaintiff's Report: 1) the aforementioned copy, created on January 31, 2019, which falsely reported Plaintiff's misdemeanor conviction as a felony, and 2) an updated copy, created on February 12, 2019, which accurately reported Plaintiff's misdemeanor conviction as a misdemeanor.

47.     On February 14, 2019, Mr. Juliano received mail correspondence from TURSS, which read:

> We received your request for investigation regarding your potential criminal history on 2/5/2019. After further investigation, our findings show the record in our database under S-0700-CR-2014121784 **has been confirmed as inaccurate or incomplete public record information** based on the following additional record details obtained from the Arizona, Maricopa County Superior Court at (602) 372-5375.
>
> On 2/6/19 we confirmed that record S-0700-CR-2014121784 for the offense of Disord Conduct-Weapon/Instr has the offense level Misdemeanor with disposition Guilty on 7/10/2014.
>
> Additionally, we have provided notification of this dispute resolution and final outcome to our customer Retreat and **the recommendation to our customer based on their criminal history policies has been updated to reflect an accept recommendation.**

(emphasis added).

48.     On or about February 15, 2019, Mr. Juliano received a telephone call and email from Ms. Patterson informing him that his rental application had now been accepted and that his move in date was scheduled for February 28, 2019.

49.     Mr. Juliano's mother had agreed to allow him, Ms. Vaughn, and their dogs to continue to live in her home for a limited period of time while they looked for housing.  As a result of the false information contained within TURSS's Report, and its failure to perform a reasonable reinvestigation after Mr. Juliano's initial dispute of the false information, they all had to continue living in Mr. Juliano's mother's house for a month longer than he had previously agreed.

50.     But for TURSS's false Report and failure to perform a reasonable reinvestigation after Mr. Juliano's initial dispute of the false information, Plaintiff's

rental application would have been accepted by The Retreat and he and Ms. Vaughn would have been allowed to move into the unit in early February 2019.

51. TURSS, and its parent TransUnion LLC ("TransUnion"), have been sued many times for its failure to use reasonable procedures to assure that the rental-purposed consumer reports it sells are maximally accurate. TURSS knows that its process for obtaining and accurately reporting, updating, and investigating criminal public records is so shoddy that it leads to material inaccuracies. TURSS's parent company, TransUnion, has been admonished by at least one federal court that it doesn't comply with the FCRA.

52. Among many other cases, for instance, a jury recently returned a verdict in favor of plaintiffs against TransUnion for its failure to use reasonable procedures to assure maximum possible accuracy in erroneously reporting that the plaintiffs in that case were terrorists, money launderers, and narcotics traffickers on the Office of Foreign Asset Control's "blocked persons" list. *Ramirez v. TransUnion, LLC*, No. 3:13CV632 (N.D. Cal.).

53. TURSS doesn't have a reasonable procedure in place to assure maximal accuracy because it wouldn't make as much money if it implemented such procedures. It collects information from third party vendors, which it repackages and sells as its rental screening products.

54. TURSS has access to TransUnion's databases, which contain the name and address of substantially all of the U.S. credit-active population, a listing of their existing credit relationships, and their timeliness in repaying debt obligations. TransUnion also has alternative credit source information such as rental payments and utility payments, information from courts, government agencies, and other public records including suits, liens, judgments, bankruptcies, professional licenses, real property, vehicle ownership, other assets, driver violations, criminal records, and contact information.

55. TURSS doesn't have reasonable procedures in place to conduct a reasonable investigation of disputed information because it simply confirms that its internal records contain the erroneous information. TURSS knows that cursory reviews of its internal records aren't sufficient investigations under the FCRA.

56. Despite knowing that its procedures are unreasonable and do not assure the maximal accuracy required by the FCRA, TURSS persists in utilizing procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Mr. Juliano.

57. Credit reporting agencies such as TURSS have specifically been on notice that its cursory dispute procedures are deficient for over 15 years. *Johnson v. MBNA Bank, N.A.*, 357 F.3d 426 (4th Cir. 2004); *accord White v. TransUnion, LLC*, 462 F.Supp. 2d 1079 (C.D. Cal. 2006).

58. The injuries suffered by Mr. Juliano as a direct result of TURSS's erroneous reporting and unreasonable investigation are the type of injuries that the FCRA was enacted to address. At common law, TURSS's conduct would have given rise to causes of action based on defamation and invasion of privacy.

59. As a direct result of TURSS's conduct, Mr. Juliano has suffered these injuries resulting in damages, including housing discrimination against him, the inability to rent the unit he desired, the expenditure of time and money looking for another unit and trying to correct TURSS's erroneous Report; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his family and loved ones; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible**

**Accuracy**

60. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

61. Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

62. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

63. In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

64. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

65. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

66. Upon receiving Plaintiff's initial dispute regarding the completeness and accuracy of his consumer report, Defendant violated 15 U.S.C. § 1681i by failing to perform a reasonable reinvestigation to determine whether the disputed information was inaccurate.

67. Defendant willfully violated 15 U.S.C. § 1681i in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

68. In the alternative, Defendant negligently violated 15 U.S.C. § 1681i, which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

69. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

70. WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

71. Plaintiff demands a trial by jury.

Respectfully,

Daniel Juliano

*/s/ Susan Mary Rotkis*
By counsel
Susan Mary Rotkis, AZ Bar 032866
PRICE LAW GROUP, APC
382 S. Convent Ave.
Tucson, Arizona 85716
Tel. (520) 622-2481

susan@pricelawgroup.com